Plaintiffs' Appendix of Summary Judgment Evidence

# Exhibit 18

**From:** michael.fraser@us.pwc.com [mailto:michael.fraser@us.pwc.com]
**Sent:** Monday, April 03, 2006 6:39 PM
**To:** Ted.Fisher
**Cc:** stephen.v.zawoyski@us.pwc.com; linda.smith@us.pwc.com; john.queenan@us.pwc.com; simone.vanca@us.pwc.com
**Subject:** Jim's Maintenance Draft Report

Ted,

Please find attached the Draft report for Jim's Maintenance & Sons Inc. I would like to discuss a few points which are not conveyed in the report. Please call me on my cell when it suits you.

Kind Regards

Michael



TARGET/ITZEP
Confidential
0314

| Vendor Name: Jim's Maintenance & Sons Inc | Visit Date: March 27-30, 2006 |
|---|---|
| Primary Contact: Bryan Funderburgh, Vice President | Submittal Date: TBD, 2006 |

### Background

Jim's Maintenance & Sons Inc, headquartered in Harrah, Oklahoma employs approximately 300 employees (275 employees at Target stores) and supplies cleaning services to 68 Target stores in Arizona, Kansas, Missouri, Texas, New Mexico and Oklahoma. PricewaterhouseCoopers met with Jim's Maintenance & Sons Inc management in Harrah, Oklahoma between March 27 and March 30, 2006.

### Basis of Work

Our Services were performed and this Report was developed in accordance with our Statement of Work dated January 6, 2006 and are subject to the terms and conditions included therein.

Our Services were performed in accordance with Standards for Consulting Services established by the American Institute of Certified Public Accountants ("AICPA"). The procedures we performed did not constitute an examination or a review in accordance with generally accepted auditing standards or attestation standards. Accordingly, we provide no opinion, attestation or other form of assurance with respect to our work or the information upon which our work was based. We did not audit or otherwise verify the information supplied to us in connection with this engagement, from whatever source, except as may be specified in this Report or in our Statement of Work.

Our work was limited to the specific procedures and analysis described herein and was based only on the information made available through March 30, 2006. Accordingly, changes in circumstances after this date could affect the findings outlined in this Report.

This Report and all PricewaterhouseCoopers deliverables are intended solely for the management and board of directors of Target Corporation for their internal use and benefit and are not intended to nor may they be relied upon by any other party ("Third Party"). Neither this deliverable nor its contents may be distributed to, discussed with, or otherwise disclosed to any Third Party without the prior written consent of PricewaterhouseCoopers. PricewaterhouseCoopers accepts no liability or responsibility to any Third Party who gains access to this deliverable.

### Objective and Approach

The objective of PricewaterhouseCoopers' services was to gain an understanding of Jim's Maintenance & Sons Inc ("Vendor") polices related to the processes/transactions bulleted below, and to review the vendor's compliance with those policies and applicable laws and regulations. PricewaterhouseCoopers' services included inquiry with management and testing of a selected sample of employee files and company documents. The scope of PricewaterhouseCoopers' services was limited to a corporate office review of the following processes/transactions:

1.0   New Hire Processing
2.0   HR Management
3.0   Hours Recorded and Worked
4.0   Payroll Calculation
5.0   Termination
6.0   Training
7.0   Other (e.g. Subcontracting)

The report contained on pages 2-6 includes the result of our services performed.

TARGET/ITZEP
Confidential
0315

This Report is intended for the use and benefit of the Target Corporation only and is not intended for reliance by any other Third Party
Confidential - Prepared under Client/Attorney Privilege

| Vendor Name: Jim's Maintenance & Sons Inc | Visit Date: March 27-30, 2006 |
|---|---|
| Primary Contact: Bryan Funderburgh, Vice President | Submittal Date: TBD, 2006 |

| Process/Transactions | Observations |
|---|---|
| **1.0 New Hire Processing** | |
| 1.1 Background Checks | 1. According to management, informal and undocumented policies and procedures regarding background checks exist. Background checks are only performed on newly hired exempt employees.<br><br>During the documentation review, none of our exempt sampled employee files (5) contained a background check. Management stated that the five sampled exempt employees have been promoted from crew positions to supervisor positions, and hence did not require a background check. According to management, background checks are performed on rare occasions, the last background check evidenced was performed in 2001. |
| 1.2 I-9 Documentation | 1. According to the Immigration Reform and Control Act ("IRCA") 1986, 8 CFR 1274(a)(2), the employer must attest in writing, under penalty of perjury, that it has verified that the individual (employee) is not an unauthorized alien by examining approved documentation. The employer must ensure the applicable fields are completed on the Form I-9 ("I-9").<br><br>During the documentation review, one or more required fields for 49 out of 50 sampled I-9s were found to be partially incomplete:<br>   a. I-9 Section 1 "Employee Information and Verification": (27 out of 50 sampled files were partially incomplete)<br>      i. Missing alien card number (20)<br>      ii. Missing date of birth (5)<br>      iii. Missing Social Security Number (5)<br>      iv. Missing employee submission date (11)<br>   b. I-9 Section 2 "Employer Review and Verification": (49 out of 50 sampled files were partially incomplete)<br>      i. Missing hire date (49)<br>      ii. Missing employer review and verification (43)<br>      iii. Missing employer information (48)<br>      iv. Missing employer submission date (48)<br><br>Note: Missing information was found elsewhere in employee's file for all 49 files.<br><br>2. According to the IRCA 1986, 8 CFR 1274(a)(2), if translators or preparers are used by the employee to fill out Section 1, such individuals must also sign, date, and provide requested information. The preparers or translators must then complete the "Preparer/Translator Certification" portion of the I-9.<br><br>During the documentation review, none out of 50 sampled I-9s had the "translator or preparer" section completed. Management stated that approximately 50 percent of their workforce can only communicate in Spanish. Management were unaware that the corresponding I-9 section requires completion.<br><br>3. According to the IRCA 1986, 8 CFR 1274(a)(2), employers are required to re-verify employment eligibility when an employee's employment authorization (indicated in Form I-9 Section 1), or evidence of employment authorization recorded in section 2, has expired.<br><br>During the documentation review, 1 sampled employee had an alien card that expired in 2004. Management has contacted employee's supervisor in order to obtain a valid copy.<br><br>4. During the documentation review, photocopies of supporting documentation were provided for all |

This Report is intended for the use and benefit of the Target Corporation only and is not intended for reliance by any other Third Party
Confidential – Prepared under Client/Attorney Privilege

TARGET/ITZEP
Confidential
0316

Page 2 of 6

| Vendor Name: Jim's Maintenance & Sons Inc | Visit Date: March 27-30, 2006 |
|---|---|
| Primary Contact: Bryan Funderburgh, Vice President | Submittal Date: TBD, 2006 |

| Process/Transactions | Observations |
|---|---|
| | sampled employees. 1 out of the 50 photocopies had faded borders with clearly typed text. |
| **2.0 HR Management** | |
| 2.1 Employment of Minors | 1. Management stated that informal and undocumented policies and procedures regarding employment of minors existed and that no minor was employed by the vendor. During documentation review, one minor was identified in the sampled employee files. The minor resides in Texas and was aged 16 when hired (01/01/2006).<br><br>Note: Although this breaks their informal policy, it doesn't appear to violate the Federal or Texas State Law regarding minor work hour restrictions. In addition, the employer is not required to maintain an age certificate for the minor. |
| 2.2 Determination of Exempt/ Non-Exempt Status | 1. According to the Fair Labor Standards Act ("FLSA"), 29 CFR 541.600(a) and 29 CFR 541.700(a) an exempt employee must be compensated on a salary basis which is not less than $455 per week. To qualify for exemption, an employee's primary duty must be the performance of exempt work. When determining an employees primary duty, factors to consider include, but not limited to, the relative importance of the exempt duties as compared with other work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.<br><br>During the documentation review, formal policies and procedures regarding job descriptions of exempt and non-exempt employees were documented. However, employees who are exempt were not compensated the minimum requirement of $455 per week. The following salaries were provided to the 5 out of 5 sampled "exempt" employees during the pay period March 1 to March 15, 2006.<br><br>    i. $928.00<br>    ii. $900.00<br>    iii. $800.00<br>    iv. $746.76<br>    v. $800.00<br><br>Vendor pays their exempt employees on a semi-monthly pay schedule. Federal Law requires payment of $455 per week. The pay period sampled should yield each employee at least $975.00 (2 weeks at $455.00 and 1 day at $65.00, totaling 15 days). However each pay period during the year does not always have 15 days. The second half of some months have 13 and 16 days, which needs to be taken into account when determining employee's salary. Management expressed unawareness to the Federal Law compensation requirement for salaried employees, and is currently consulting their attorney to remedy any potential underpayment. |
| 2.3 Scheduling Working Hours | 1. According to management, the work schedule is verbally communicated to employees by their respective supervisors and based on variable store starting time requests. Currently a schedule form is being implemented providing guidance regarding entry and exit times, meal and break duration and total shift hours. |
| 2.4 Collection of Form W-4 | 1. According to 26 CFR 31.3402(f)(2)-1(e) and 31.3402 (f)(5)-1(b) of the Internal Revenue Regulations, an employer should not knowingly accept or use an invalid Form W-4 to calculate withholding. If the employee does not provide a valid one, the employer should withhold taxes as if the employee were single and claiming no withholding allowances. However, if a prior W-4 is |

This Report is intended for the use and benefit of the Target Corporation only and is not intended for reliance by any other Third Party
Confidential - Prepared under Client/Attorney Privilege    TARGET/ITZEP    Page 3 of 6
Confidential
0317

| Vendor Name: Jim's Maintenance & Sons Inc | Visit Date: March 27-30, 2006 |
|---|---|
| Primary Contact: Bryan Funderburgh, Vice President | Submittal Date: TBD, 2006 |

| Process/Transactions | Observations |
|---|---|
| | in effect with respect to the employee, the employer should continue to withhold in accordance with the prior form.<br><br>During documentation review, 46 out of 50 sampled files did not contain a W-4 form, but all sampled files contained a W-9 form (Taxpayer Identification Number request form). Management was unaware why W-9 forms were used.<br><br>2 out of the 4 submitted W-4s were partially incomplete. The following incompleteness was observed:<br>   i. Missing submission date (1)<br>   ii. Missing submission date and employee name (1)<br><br>2. Management stated and we evidenced that no deductions are made to employee's income for tax purposes. However, W-4's were evidenced in and provided to employees in the New Application Hire Package. Management noted that employees and supervisors have a tendency not to submit W-4 forms. |
| 2.5 Record Keeping | 1. During the documentation review, inconsistencies between the vendor's payroll timesheet and Target's overnight security cleaning crew sign-in and out log were identified in Target Lee Summit and Target Liberty stores.<br><br>Target Lee Summit overnight security cleaning crew log shows that three employees (Employees A, B and C) have signed in during the period from 02/26/06 to 3/5/06. Only two of those employees (Employee A and B) were identified on the vendor's payroll timesheet. Management has been unable to identify the employee (Employee C) who is not present on the payroll timesheet, and stated that this employee does not belong to the overnight cleaning crew team.<br><br>In addition to the two employees identified on both the Target security cleaning crew log and the vendor's payroll timesheet, three employees (Employees D, E and F) were identified solely on the vendor's payroll timesheet. Management stated that Lee Summit store is a Super Target store that requires more than three employees to fully clean the stores, and therefore it appears that some employees (Employees D, E and F) may not have been signed in at the Target Stores.<br><br>Target Liberty's overnight security cleaning crew log shows four employees (Employees A, B, C and D) signing in on a regular basis during the period from 2/26/06 to 3/5/06. Only one of those employees (Employee A, a supervisor) was identified on the vendor's payroll timesheet. However, an additional four employees (Employees E, F, G and H) were identified on the vendor's payroll timesheet but have not been identified on the Target overnight security cleaning crew log. Management has been unable to provide an explanation and has questioned the validity of the Target overnight security cleaning crew logs. |
| 2.6 Complaint Reporting | 1. During the documentation review, formal policies and procedures were evidenced. The employee handbook conveys that exempt employees should report sexual harassment complaints to the President immediately. New hire application package contains a form that should be signed by the employee to acknowledge that sexual harassment and complaints must be communicated to the President.<br><br>Complaints are not documented and no complaint log is maintained for either exempt or non-exempt employees. New hire application forms pertaining to sexual harassment were evidenced in both exempt and non-exempt employee's files. |

This Report is intended for the use and benefit of the Target Corporation only and is not intended for reliance by any other Third Party
Confidential - Prepared under Client/Attorney Privilege

| | |
|---|---|
| Vendor Name: Jim's Maintenance & Sons Inc | Visit Date: March 27-30, 2006 |
| Primary Contact: Bryan Funderburgh, Vice President | Submittal Date: TBD, 2006 |

| Process/Transactions | Observations |
|---|---|
| **3.0 Hours Recorded and Worked** | |
| 3.1 Time Recorded | 1. According to the FLSA, 29 CFR 516.6, records for non-exempt employee shall include the time of day and day of week on which the employee's workweek begins, unless the regular workweek is consistent each week. In the later case, work schedule exceptions must be documented.<br><br>During the documentation review, discrepancies were found between vendor's payroll timesheets and vendors' formalized and documented policies and procedures. Vendor timesheets are not signed by employees or supervisors, the record of an employee working on any particular day is denoted by a dash/cross/tick in a checkbox. There is no record of the time that employees are starting and finishing work. In essence the employees are paid on a daily basis were actual hours worked are not recorded or taken into account when determining compensation. Each checkbox marked signifies that the employee has worked 6.5 hours.<br><br>Management stated that policies and procedures are enforced in practice, but carelessness when completing time sheets results in extra ticks/crosses/dashes. Payroll manager only looks at the payroll timesheets to obtain the names of the employees who are active and require compensation, and any relevant comments from the supervisors.<br><br>Vendors' formal policies and procedures outline that employees need written consent from management to work more than 6 days in any given week or more than 8 hours in a given day. We did not evidence any written consent or denial for overtime. Using management's explanation for calculating weekly work hours, the sampled pay periods did not convey overtime worked.<br><br>Note: Vendor timesheets do not reconcile with the formalized policies and procedures. We are unable to determine whether the policies and procedures that management presented to us are in fact how the process works. |
| **4.0 Payroll Calculation** | |
| 4.1 Regular Rate of Pay and Minimum Wage | 1. During the documentation review, no exceptions were noted in sampled employee files, payroll and time records for non exempt employees. Refer to section 2.2, Determination of Exempt/Non-Exempt Status for exempt employees. |
| 4.2 Recording Overtime | 1. Refer to section 3.1, Time Recorded. Due to the inconsistent time record keeping, unable able to complete this step. |
| 4.3 Minimum Wage, Regular Pay, and Overtime Calculation | 1. During the documentation review, no exceptions were noted in sampled employee files, payroll and time records. |
| **5.0 Termination** | |
| 5.1 Termination Payments | 1. During the documentation review, determination of whether termination payments were paid within the required time period was unable to be completed. Vendor does not record the cause for termination or the date of termination. Management stated that the terminated employees are paid either on their next pay day or earlier if required by state law. |
| **6.0 Training** | |

This Report is intended for the use and benefit of the Target Corporation only and is not intended for reliance by any other Third Party
Confidential - Prepared under Client/Attorney Privilege

| Vendor Name: Jim's Maintenance & Sons Inc | Visit Date: March 27-30, 2006 |
|---|---|
| Primary Contact: Bryan Funderburgh, Vice President | Submittal Date: TBD, 2006 |

| Process Transactions | Observations |
|---|---|
| 6.1 Training | 1. During the documentation review, no exceptions were noted. Management stated that only on the job training is conducted. Training manuals are offered in English, however, some supervisors translate manuals into Spanish in order to allow Spanish speaking employees to review them. |
| 7.0 Other | |
| 7.1 Subcontracting | 1. Management stated no subcontractors are used for Target, however there are numerous anomalies which warrants further investigation; lack of deductions for tax purposes, the use of W-9 forms instead of W-4 forms and inconsistencies between names across Target security sign in sheets and vendor's payroll records. |
| 7.2 Loans/Advances | 1. No exceptions were noted as management stated no advances or loans are granted to employees. |

TARGET/ITZEP
Confidential
0320

This Report is intended for the use and benefit of the Target Corporation only and is not intended for reliance by any other Third Party
Confidential - Prepared under Client/Attorney Privilege
Page 6 of 6

Plaintiffs' Appendix of Summary Judgment Evidence

# Exhibit 19

| Vendor Name: Jim's Maintenance & Sons Inc | Visit Date: March 27-30, 2006 |
|---|---|
| Primary Contact: Bryan Funderburgh, Vice President | Submittal Date: April 25, 2006 |

## Background

Jim's Maintenance & Sons Inc, headquartered in Harrah, Oklahoma employs approximately 300 employees (275 employees at Target stores) and supplies cleaning services to 68 Target stores in Arizona, Kansas, Missouri, Texas, New Mexico and Oklahoma. PricewaterhouseCoopers met with Jim's Maintenance & Sons Inc management in Harrah, Oklahoma between March 27 and March 30, 2006.

## Basis of Work

Our Services were performed and this Report was developed in accordance with our Statement of Work dated January 6, 2006 and are subject to the terms and conditions included therein.

Our Services were performed in accordance with Standards for Consulting Services established by the American Institute of Certified Public Accountants ("AICPA"). The procedures we performed did not constitute an examination or a review in accordance with generally accepted auditing standards or attestation standards. Accordingly, we provide no opinion, attestation or other form of assurance with respect to our work or the information upon which our work was based. We did not audit or otherwise verify the information supplied to us in connection with this engagement, from whatever source, except as may be specified in this Report or in our Statement of Work.

Our work was limited to the specific procedures and analysis described herein and was based only on the information made available through March 30, 2006. Accordingly, changes in circumstances after this date could affect the findings outlined in this Report.

This Report and all PricewaterhouseCoopers deliverables are intended solely for the management and board of directors of Target Corporation for their internal use and benefit and are not intended to nor may they be relied upon by any other party ("Third Party"). Neither this deliverable nor its contents may be distributed to, discussed with, or otherwise disclosed to any Third Party without the prior written consent of PricewaterhouseCoopers. PricewaterhouseCoopers accepts no liability or responsibility to any Third Party who gains access to this deliverable.

## Objective and Approach

The objective of PricewaterhouseCoopers' services was to gain an understanding of Jim's Maintenance & Sons Inc ("Vendor") polices related to the processes/transactions bulleted below, and to review the vendor's compliance with those policies and applicable laws and regulations. PricewaterhouseCoopers' services included inquiry with management and testing of a selected sample of employee files and company documents. The scope of PricewaterhouseCoopers' services was limited to a corporate office review of the following processes/transactions:

1.0 New Hire Processing
2.0 HR Management
3.0 Hours Recorded and Worked
4.0 Payroll Calculation
5.0 Termination
6.0 Training
7.0 Other (e.g. Subcontracting)

The report contained on pages 2-6 includes the result of our services performed.

EXHIBIT
PH 19
10/2/07 N. Gisch

This Report is intended for the use and benefit of the Target Corporation only and is not intended for reliance by any other Third Party
Confidential - Prepared under Client/Attorney Privilege
Page 1 of 6

TARGET/ITZEP
Confidential
321

| Vendor Name: Jim's Maintenance & Sons Inc | Visit Date: March 27-30, 2006 |
|---|---|
| Primary Contact: Bryan Funderburgh, Vice President | Submittal Date: April 25, 2006 |

| Process/Transaction | Observations |
|---|---|
| **1.0 New Hire Processing** | |
| 1.1 Background Checks | 1. According to management, informal and undocumented policies and procedures regarding background checks exist. Background checks are only performed on newly hired exempt employees.<br><br>During the documentation review, none of our exempt sampled employee files (5) contained a background check. Management stated that the five sampled exempt employees have been promoted from crew positions to supervisor positions, and hence did not require a background check. According to management, background checks are performed on rare occasions, the last background check evidenced was performed in 2001. |
| 1.2 I-9 Documentation | 1. According to the Immigration Reform and Control Act ("IRCA") 1986, 8 CFR 1274(a)(2), the employer must attest in writing, under penalty of perjury, that it has verified that the individual (employee) is not an unauthorized alien by examining approved documentation. The employer must ensure the applicable fields are completed on the Form I-9 ("I-9").<br><br>During the documentation review, one or more required fields for 49 out of 50 sampled I-9s were found to be partially incomplete:<br>   a. I-9 Section 1 "Employee Information and Verification": (27 out of 50 sampled files were partially incomplete)<br>      i. Missing alien card number (20)<br>      ii. Missing date of birth (5)<br>      iii. Missing Social Security Number (5)<br>      iv. Missing employee submission date (11)<br><br>   b. I-9 Section 2 "Employer Review and Verification": (49 out of 50 sampled files were partially incomplete)<br>      i. Missing hire date (49)<br>      ii. Missing employer review and verification (43)<br>      iii. Missing employer information (48)<br>      iv. Missing employer submission date (48)<br><br>Note: Missing information for social security number, date of birth, alien card number was found elsewhere in employee's file for all 49 files. Unable to determine if 49 of the files were submitted within the mandatory three day post hire period.<br><br>2. According to the IRCA 1986, 8 CFR 1274(a)(2), if translators or preparers are used by the employee to fill out Section 1, such individuals must also sign, date, and provide requested information. The preparers or translators must then complete the "Preparer/Translator Certification" portion of the I-9.<br><br>During the documentation review, none out of 50 sampled I-9s had the "translator or preparer" section completed. Management stated that approximately 50 percent of their workforce can only communicate in Spanish. Management were unaware that the corresponding I-9 section requires completion.<br><br>3. According to the IRCA 1986, 8 CFR 1274(a)(2), employers are required to re-verify employment eligibility when an employee's employment authorization (indicated in Form I-9 Section 1), or evidence of employment authorization recorded in section 2, has expired.<br><br>During the documentation review, 1 sampled employee had an alien card that expired in 2004. Management has contacted employee's supervisor in order to obtain a valid copy. |

This Report is intended for the use and benefit of the Target Corporation only and is not intended for reliance by any other Third Party
nfidential - Prepared under Client/Attorney Privilege

| Vendor Name: Jim's Maintenance & Sons Inc | Visit Date: March 27-30, 2006 |
|---|---|
| Primary Contact: Bryan Funderburgh, Vice President | Submittal Date: April 25, 2006 |

| Policies/Transactions | Observations |
|---|---|
| | 4. During the documentation review, photocopies of supporting documentation were provided for all sampled employees. 1 out of the 50 photocopies had faded borders with clearly typed text. |
| **2.0 HR Management** | |
| 2.1 Employment of Minors | 1. Management stated that informal and undocumented policies and procedures regarding employment of minors existed and that no minor was employed by the vendor. During documentation review, one minor was identified in the sampled employee files. The minor resides in Texas and was aged 16 when hired (01/01/2006).<br><br>Note: Although this breaks their informal policy, it doesn't appear to violate the Federal or Texas State Law regarding minor work hour restrictions. In addition, the employer is not required to maintain an age certificate for the minor. |
| 2.2 Determination of Exempt/ Non-Exempt Status | 1. According to the Fair Labor Standards Act ("FLSA"), 29 CFR 541.600(a) and 29 CFR 541.700(a) an exempt employee must be compensated on a salary basis which is not less than $455 per week. To qualify for exemption, an employee's primary duty must be the performance of exempt work. When determining an employees primary duty, factors to consider include, but not limited to, the relative importance of the exempt duties as compared with other work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.<br><br>During the documentation review, formal policies and procedures regarding job descriptions of exempt and non-exempt employees were documented. However, employees who are exempt were not compensated the minimum requirement of $455 per week. The following salaries were provided to the 5 out of 5 sampled "exempt" employees during the pay period March 1 to March 15, 2006.<br><br>    i. $928.00<br>    ii. $900.00<br>    iii. $800.00<br>    iv. $746.76<br>    v. $800.00<br><br>Vendor pays their exempt employees on a semi-monthly pay schedule. Federal Law requires payment of $455 per week. The pay period sampled should yield each employee at least $975.00 (2 weeks at $455.00 and 1 day at $65.00, totaling 15 days). However each pay period during the year does not always have 15 days. The second half of some months have 13 and 16 days, which needs to be taken into account when determining employee's salary. Management expressed unawareness to the Federal Law compensation requirement for salaried employees, and is currently consulting their attorney to remedy any potential underpayment. |
| 2.3 Scheduling Working Hours | 1. According to management, the work schedule is verbally communicated to employees by their respective supervisors and based on variable store starting time requests. Currently a schedule form is being implemented providing guidance regarding entry and exit times, meal and break duration and total shift hours. |

This Report is intended for the use and benefit of the Target Corporation only and is not intended for reliance by any other Third Party
ifidential - Prepared under Client/Attorney Privilege

| Vendor Name: Jim's Maintenance & Sons Inc | Visit Date: March 27-30, 2006 |
|---|---|
| Primary Contact: Bryan Funderburgh, Vice President | Submittal Date: April 25, 2006 |

| | | |
|---|---|---|
| 2.4 Collection of Form W-4 | 1. | According to 26 CFR 31.3402(f)(2)-1(e) and 31.3402 (f)(5)-1(b) of the Internal Revenue Regulations, an employer should not knowingly accept or use an invalid Form W-4 to calculate withholding. If the employee does not provide a valid one, the employer should withhold taxes as if the employee were single and claiming no withholding allowances. However, if a prior W-4 is in effect with respect to the employee, the employer should continue to withhold in accordance with the prior form.<br><br>During documentation review, 46 out of 50 sampled files did not contain a W-4 form, but all sampled files contained a W-9 form (Taxpayer Identification Number request form). Management was unaware why W-9 forms were used.<br><br>2 out of the 4 submitted W-4s were partially incomplete. The following incompleteness was observed:<br>　i. Missing submission date (1)<br>　ii. Missing submission date and employee name (1) |
| | 2. | Management stated and we evidenced that no deductions are made to employee's income for tax purposes. However, W-4's were evidenced in and provided to employees in the New Application Hire Package. Management noted that employees and supervisors have a tendency not to submit W-4 forms. |
| 2.5 Record Keeping | 1. | During the documentation review, inconsistencies between the vendor's payroll timesheet and Target's overnight security cleaning crew sign-in and out log were identified in Target Lee Summit and Target Liberty stores.<br><br>Target Lee Summit overnight security cleaning crew log shows that three employees (Employees A, B and C) have signed in during the period from 02/26/06 to 3/5/06. Only two of those employees (Employee A and B) were identified on the vendor's payroll timesheet. Management has been unable to identify the employee (Employee C) who is not present on the payroll timesheet, and stated that this employee does not belong to the overnight cleaning crew team.<br><br>In addition to the two employees identified on both the Target security cleaning crew log and the vendor's payroll timesheet, three employees (Employees D, E and F) were identified solely on the vendor's payroll timesheet. Management stated that Lee Summit store is a Super Target store that requires more than three employees to fully clean the stores, and therefore it appears that some employees (Employees D, E and F) may not have been signed in at the Target Stores.<br><br>Target Liberty's overnight security cleaning crew log shows four employees (Employees A, B, C and D) signing in on a regular basis during the period from 2/26/06 to 3/5/06. Only one of those employees (Employee A, a supervisor) was identified on the vendor's payroll timesheet. However, an additional four employees (Employees E, F, G and H) were identified on the vendor's payroll timesheet but have not been identified on the Target overnight security cleaning crew log. Management has been unable to provide an explanation and has questioned the validity of the Target overnight security cleaning crew logs. |
| 2.6 Complaint Reporting | 1. | During the documentation review, formal policies and procedures were evidenced. The employee handbook conveys that exempt employees should report sexual harassment complaints to the President immediately. New hire application package contains a form that should be signed by the employee to acknowledge that sexual harassment and complaints must be communicated to the President. |

This Report is intended for the use and benefit of the Target Corporation only and is not intended for reliance by any other Third Party
Confidential - Prepared under Client/Attorney Privilege
Page 4 of 6

TARGET/ITZEP
Confidential
324

| Vendor Name: Jim's Maintenance & Sons Inc | Visit Date: March 27-30, 2006 |
|---|---|
| Primary Contact: Bryan Funderburgh, Vice President | Submittal Date: April 25, 2006 |

|  |  |
|---|---|
|  | Complaints are not documented and no complaint log is maintained for either exempt or non-exempt employees. New hire application forms pertaining to sexual harassment were evidenced in both exempt and non-exempt employee's files. |
| **3.0 Hours Recorded and Worked** | |
| 3.1 Time Recorded | 1. According to the FLSA, 29 CFR 516.6, records for non-exempt employee shall include the time of day and day of week on which the employee's workweek begins, unless the regular workweek is consistent each week. In the later case, work schedule exceptions must be documented.<br><br>During the documentation review, discrepancies were found between vendor's payroll timesheets and vendors' formalized and documented policies and procedures. Vendor timesheets are not signed by employees or supervisors, the record of an employee working on any particular day is denoted by a dash/cross/tick in a checkbox. There is no record of the time that employees are starting and finishing work. In essence the employees are paid on a daily basis were actual hours worked are not recorded or taken into account when determining compensation. Each checkbox marked signifies that the employee has worked 6.5 hours.<br><br>Management stated that policies and procedures are enforced in practice, but carelessness when completing time sheets results in extra ticks/crosses/dashes. Payroll manager only looks at the payroll timesheets to obtain the names of the employees who are active and require compensation, and any relevant comments from the supervisors.<br><br>Vendors' formal policies and procedures outline that employees need written consent from management to work more than 6 days in any given week or more than 8 hours in a given day. We did not evidence any written consent or denial for overtime. Using management's explanation for calculating weekly work hours, the sampled pay periods did not convey overtime worked.<br><br>Note: Vendor timesheets do not reconcile with the formalized policies and procedures. We are unable to determine whether the policies and procedures that management presented to us are in fact how the process works. |
| **4.0 Payroll Calculation** | |
| 4.1 Regular Rate of Pay and Minimum Wage | 1. During the documentation review, no exceptions were noted in sampled employee files, payroll and time records for non exempt employees. Refer to section 2.2, Determination of Exempt/Non-Exempt Status for exempt employees. |
| 4.2 Recording Overtime | 1. Refer to section 3.1, Time Recorded. Due to the inconsistent time record keeping, unable able to complete this step. |
| 4.3 Minimum Wage, Regular Pay, and Overtime Calculation | 1. During the documentation review, no exceptions were noted in sampled employee files, payroll and time records. |
| **5.0 Termination** | |
| 5.1 Termination Payments | 1. During the documentation review, determination of whether termination payments were paid within the required time period was unable to be completed. Vendor does not record the cause for termination or the date of termination. Management stated that the terminated employees are paid either on their next pay day or earlier if required by state law. |

This Report is intended for the use and benefit of the Target Corporation only and is not intended for reliance by any other Third Party
\nfidential - Prepared under Client/Attorney Privilege                                                                    Page 5 of 6

TARGET/ITZEP
Confidential
325

| Vendor Name: Jim's Maintenance & Sons Inc | Visit Date: March 27-30, 2006 |
|---|---|
| Primary Contact: Bryan Funderburgh, Vice President | Submittal Date: April 25, 2006 |

## 6.0 Training

| 6.1 Training | 1. During the documentation review, no exceptions were noted. Management stated that only on the job training is conducted. Training manuals are offered in English, however, some supervisors translate manuals into Spanish in order to allow Spanish speaking employees to review them. |
|---|---|

## 7.0 Other

| 7.1 Subcontracting | 1. Management stated no subcontractors are used for Target, however there are numerous anomalies which warrants further investigation; lack of deductions for tax purposes, the use of W-9 forms instead of W-4 forms and inconsistencies between names across Target security sign in sheets and vendor's payroll records. |
|---|---|
| 7.2 Loans/Advances | 1. No exceptions were noted as management stated no advances or loans are granted to employees. |

TARGET/ITZEP
Confidential
326

This Report is intended for the use and benefit of the Target Corporation only and is not intended for reliance by any other Third Party
Confidential - Prepared under Client/Attorney Privilege
Page 6 of 6